Evelyn A. SEBESTA, Appellant,

v.

Mary Ann DANIELS, Individually and as Independent Executrix of the Estate of Russell Enloe Sr., et al., Appellees.

No. A14–90–727–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 27, 1991.

Rehearing Overruled July 25, 1991.

Les Fleming, Houston, for appellant.

James E. Gillies, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a suit to partition residential real estate located at 7136 Fulton in Houston. The suit was brought by the children of Russell Enloe Sr., who claimed an undivided ⅕ interest in the property. An undivided ⅘ interest in the property was sold previously to Evelyn Sebesta by Byron Enloe, the independent executor of the estate of Bennie McCarty Enloe. Ms. Sebesta claimed title to the ⅕ interest by adverse possession. In a trial to the court, judgment was for appellees. Finding that the property could not be partitioned in kind, the court ordered a sale of the property with 80% of the net proceeds awarded to appellant and 20% of the net proceeds awarded to appellees. Appellant brings four points of error. We affirm.

The following facts are taken from the trial court's findings of fact and are undisputed. The Last Will and Testament of Bennie McCarty Enloe devised her property at 7136 Fulton to her son Byron in trust for the use and benefit of another son Frank. The will granted Byron, as trustee, full legal title to the property. The will also designated Byron independent executor of Mrs. Enloe's estate. Upon the death of Frank, the trust was to terminate and the property was then to pass in equal shares to Mrs. Enloe's five remaining sons, including Byron and Russell.

On June 17, 1974, Frank died and the trust terminated. On April 8, 1976, Byron entered into an earnest money contract with appellant for the purchase of the entire property at 7136 Fulton. The contract referred to the seller as the "Estate of Bennie McCarty Enloe." It was also signed by Byron as "trustee," though the trust had terminated and Byron's trustee status had expired. The total purchase price was to be $18,000.00. On June 3, 1976, appellant moved on to the entire property with the permission of Byron, who was the record owner of only a ⅕ interest in the property. Appellant has continuously occupied the entire property, including appellees' ⅕ interest, since moving on to the property.

A closing of the purchase of the property was not held until July 6, 1977. In the intervening period, appellant received conveyances from all of the owners of interest in the property, except Russell. At the closing, appellant paid a total purchase price of $14,400.00, deducting 20% from the original sale price for the ⅕ interest that had not been conveyed. Appellant was also issued a title policy to an undivided ⅘ interest in the property. On August 5, 1985, Russell died without ever having conveyed his ⅕ interest. His will left all of his property to appellees.

In its conclusions of law, the trial court found that appellant was a fee simple owner of an undivided ⅘ of the property and that appellees were fee simple owners of an undivided ⅕ of the property. The court also found that appellant never commenced adverse possession of appellees' ⅕ interest since she received a 20% discount in the total purchase price. The court further found that the reduced purchase price reflected that she never received a conveyance of that interest. The court also found that appellant did not acquire title by limitations to the ⅕ interest under either sections 16.025 or 16.026 of the Texas Civil Practice and Remedies Code.

In her first point of error, appellant contends the trial court erred in holding that she did not possess equitable title to a ⅕ interest in the property under the doctrine of equitable conversion. Appellant asserts that she acquired equitable title to the ⅕ interest in the property on April 8, 1976, the date she entered into the earnest money contract with Byron Enloe. Since she had equitable title by virtue of the earnest money contract, appellant argues that the limitations period began to run on June 3, 1976, the date she entered upon the land. Appellees did not file this suit until August 5, 1986.

■ Equitable conversion is generally defined as that change in the nature of property by which, for certain purposes, realty is considered as personalty or personalty is considered as realty, and the property is transmissible as so considered. *Parson v. Wolfe*, 676 S.W.2d 689, 691 (Tex. App.—Amarillo 1984, no writ). Equitable conversion may occur by will or by contract. *Id.* In the instant case, appellant contends equitable conversion by contract. In equitable conversion by contract, the doctrine is used to decide the status of the parties' interests during the period between the execution of the contract of sale and actual transfer of legal title. *Id.* It is utilized to allocate the increase or decrease in value of the property during this period, or to determine how the realty or personalty passes upon the death of either the vendor or vendee. *Id.* Neither situation is present here. Hence, we find that doctrine of equitable conversion inapplicable to the facts of this case. We overrule appellant's first point of error.

In her remaining points of error, appellant attacks certain findings of fact and conclusions of law by the trial court. Specifically, she attacks the court's conclusion of law that the three-year and ten-year limitation statutes did not apply and she attacks the factual finding that appellant's possession of the property was not adverse.

■ In a nonjury case, the trial court's findings of fact and conclusions of law have the same force and dignity as a jury verdict on special issues. *Buzbee v. Castle-wood Civic Club*, 737 S.W.2d 366, 368 (Tex. App.—Houston [14th Dist.] 1987, no writ). Findings of fact are reviewable for legal and factual sufficiency of the evidence supporting them by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Id.* Conclusions of law are reviewable when attacked as a matter of law, but not on grounds of factual sufficiency. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd); *First Nat'l Bank in Dallas v. Kinnebrew*, 589 S.W.2d 137, 146 (Tex.App.—Tyler 1979, writ ref'd n.r.e.).

■ Appellant attacks the trial court's finding of fact that her possession of the property was never adverse to Russell's ⅕ interest in the property. Appellant does not complain of any other finding of fact by the trial court. When both the legal and factual points are raised, we must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing the record for legal sufficiency, we are to consider only the evidence and inferences that tend to support the court's finding and disregard evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 946 (Tex.1988) (citing *Glover*). If there is any evidence of probative value to support the finding, we must uphold the finding. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). If the finding is legally sufficient, we must then weigh and consider all the evidence, both in support of, and contrary to, the challenged findings. *Pool v. Ford Motor*, 715 S.W.2d 629, 635 (Tex.1986). The trial court's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Herbert v. Herbert*, 754 S.W.2d 141, 142 (Tex.1988); *Pool*, 715 S.W.2d at 635. We may not substitute our opinion for that of the trier of facts merely because we might have reached a different conclusion. *Herbert*, 754 S.W.2d at 144. One seeking

to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex. 1990).

 Appellant argues that her possession of appellees' ⅕ interest became adverse on June 3, 1976, the date she moved on to the entire property. On that date, she contends that she refused Russell's request that she pay rent. Hence, she asserts that appellees' suit filed on August 5, 1986, was barred by the three-year and ten-year limitation statutes. Appellant's testimony at trial was that Russell asked her to pay rent after the date of the closing on July 6, 1977. There was testimony by appellant's nephew, Harvey Stavinoha, that Russell requested appellant to pay rent sometime before the date of closing. On cross-examination, however, Stavinoha was unsure whether Russell's request was in fact made before or after the closing. The court as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon,* 682 S.W.2d 677, 680 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The court could reasonably have concluded that Russell did not request appellant to pay rent until after the closing.

Up to the date of closing, appellant lacked the requisite intent to appropriate appellees' ⅕ interest. As reflected by the earnest money contract, appellant intended only to purchase the entire property. No matter how exclusive and hostile to the true owner the possession of land may be, the possessor must intend to appropriate it. *Julien v. Baker,* 758 S.W.2d 873, 875 (Tex. App.—Houston [14th Dist.] 1988, writ denied), *cert. denied,* —— U.S. ——, 110 S.Ct. 367, 107 L.Ed.2d 353 (1989).

 After the date of the closing, appellant and Russell became co-tenants. Where co-tenancy is involved, the burden of proof imposed on the limitations claimant is more onerous. *Hernandez v. Hernandez,* 611 S.W.2d 732, 734 (Tex.App.—San Antonio 1981, no writ). This is so because possession by a co-tenant is pre-

sumed to be in right of common title. *Todd v. Bruner,* 365 S.W.2d 155, 160 (Tex. 1963); *Poenisch v. Quarnstrom,* 361 S.W.2d 367, 371 (Tex.1962); *Hernandez,* 611 S.W.2d at 734. A co-tenant may claim adversely to another co-tenant only if he has repudiated the co-tenancy and notice of such repudiation has been brought home to the other co-tenant. *Id.* Notice of repudiation must be clear, unequivocal, and unmistakable. *Todd,* 365 S.W.2d at 160. Although appellant paid taxes on the entire property, possession coupled with payment of taxes is not notice to a co-tenant of repudiation of common title. *Id.* The record reflects that appellant told Russell that she "bought the place" and was "living there now." She refused to pay him rent and told him "he should have been at the closing." Appellant's remarks did not necessarily constitute a repudiation of the co-tenancy that was clear, unequivocal, and unmistakable. We find that the evidence was legally and factually sufficient to support the trial court's finding.

 Appellant also attacks the trial court's conclusion of law that she did not acquire title by limitations to appellees' ⅕ interest under either sections 16.024 or 16.026 of the Texas Civil Practice and Remedies Code. We must sustain that finding if there is any evidence of probative value to support it. *Sherman v. First Nat'l Bank,* 760 S.W.2d at 242; *In re King's Estate,* 244 S.W.2d at 661.

 TEX.CIV.PRAC. & REM.CODE ANN. § 16.024 (Vernon 1986) provides that "a person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years of the day the cause of action accrues." "Color of title" means "a consecutive chain of transfers to the person in possession that is not regular because of a muniment that is not properly recorded or is only in writing, or because of a similar defect that does not want of intrinsic fairness." TEX.CIV.PRAC. & REM.CODE ANN. § 16.021(2) (Vernon 1986). TEX.CIV. PRAC. & REM.CODE ANN. § 16.026(a) also provides that "a person must bring suit not later than 10 years after the day the cause

of action accrues to recover real property held in peaceable adverse possession by another who cultivates, uses, or enjoys the property." To set the statute of limitations in motion possession must be actual, visible, notorious, distinct, and hostile. *Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 114 S.W.2d 226, 230 (Tex.1938).

Appellant argues that she entered upon the entire property under color of title by virtue of the earnest money contract. An earnest money contract may be a muniment sufficient to constitute color of title. *See Oncale v. Veyna*, 798 S.W.2d 802, 805 (Tex.App.—Houston [14th Dist.] 1990, no writ). In the instant case, the earnest money contract was not sufficient to constitute color of title because Byron was without authority to enter into that contract under the plain terms of Bennie McCarty Enloe's will. At the time of the contract, the trust had terminated a year and nine months earlier and the property had passed in equal shares to the five sons. Byron owned only an undivided ⅕ interest in the entire property. He was no longer authorized as trustee to sell the entire property, including appellees' undivided ⅕ interest.[1] Instead, he was acting only as independent executor of the estate and was without authority to sell the entire property because there was no provision in the will for such a sale. TEX.PROB.CODE § 332. A conveyance to another by one without authority or title does not furnish color of title. *See Pierce v. Gillespie*, 761 S.W.2d 390, 395–396 (Tex.App.—Corpus Christi 1988, no writ); *See also Woodburn v. Texas Town Lot & Improvement Co.*, 153 S.W. 365, 368 (Tex.App.—El Paso 1913, no writ).

Even if appellant entered upon the entire property under color of title, she was barred from claiming title to appellees' ⅕

interest under the three-year limitation period because she learned of that outstanding interest 13 months later at the closing. At that time, she received a 20% discount on the total purchase price because she had acquired four deeds representing only a ⅘ interest in the property. A short time later, she received an insurance policy from Stewart Title Guaranty Company insuring title to a ⅘ interest in the property. Appellant's recognition or acknowledgement of appellees' outstanding ⅕ interest before the completion of the three-year limitations period defeats the limitation. *See Auchterlonie v. McBride*, 705 S.W.2d 183, 186 (Tex. App.—Houston [14th Dist.] 1985, no writ) (citing *Wolgamot v. Corley*, 523 S.W.2d 491, 495 (Tex.App.—Waco 1975, writ ref'd n.r.e.)).

As for the ten-year limitation period, adverse possession could not have commenced until the closing date when she learned of Russell's outstanding ⅕ interest. Appellant's possession of appellees' ⅕ interest, however, never became adverse because appellant never repudiated the cotenancy. *Todd*, 365 S.W.2d at 160. Moreover, the closing was held on July 6, 1977. Appellees filed this suit on August 5, 1986, within the ten-year limitation period. Hence, there was probative evidence to support trial court's finding that both the three-year and ten-year limitation periods were inapplicable. Accordingly, we overrule appellant's second, third, and fourth points of error and affirm the judgment of the trial court.

1. In his supplemental brief, appellant argues that Byron was still acting as trustee when he executed the earnest money contract since a trustee may continue to exercise his powers for a reasonable period of time after termination of the trust in order to wind up the affairs of the trust. TEXAS TRUST CODE § 112.052. Appellant asserts that section 112.052 is in conflict with the trial court's determination that the trust terminated automatically upon the Frank's death. Although she had the burden of proof, appellant did not make this argument before the trial court. A point raised for the first time on appeal is waived. TEX.R.APP.P. 52(a). In any event, we see no conflict between section 112.052 and the court's determination that the trust terminated automatically because section 112.052 provides that a trust terminates if by its terms it is to continue until the happening of a certain event and the event has occurred. Moreover, we doubt whether a year and nine months constitutes a reasonable period of time in which to wind up the affairs of the trust.