IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00260-CV

 

Karl Paul Mattlage,

                                                                                       Appellant

 v.

 

Celeste Mattlage, INDIVIDUALLY 

AND as Executrix of the Estate 

of Marvin Mattlage, MARK 

MATTLAGE,
AND ROBERT SNOWDEN,

                                                                                       Appellees

 

 

 



From the 414th District Court

McLennan County, Texas

Trial Court No. 2006-2947-5

 



Opinion



 








            This appeal involves a dispute among Karl
Mattlage, Celeste Mattlage, Mark Mattlage, and Robert Snowden regarding the
devise of a specific piece of property, known as “Home Place,” in the will of
Marvin Mattlage.  Marvin’s will devised Home Place to Karl.  After executing
his will, Marvin and his wife Celeste entered a contract to sell Home Place to Mark and Robert.  After Marvin died and Celeste refused to honor the will,
Karl sued Celeste seeking a declaratory judgment that the will prevails over
the contract.  Celeste sued Karl seeking a declaratory judgment that the
contract prevails over the will and Mark and Robert for specific performance of
the contract.  These two suits were eventually consolidated and the issue in
this appeal was severed into a separate proceeding.  Karl and Celeste filed
competing summary judgment
motions.  The trial court granted Celeste’s motion, denied Karl’s, and rendered
judgment that the devise was adeemed and that Celeste was entitled to specific
performance of the contract.  In two issues, Karl contends that the trial court
erred by granting Celeste’s motion because the devise was not adeemed.  We affirm.

STANDARD OF REVIEW

We review a trial court’s summary judgment de
novo.  See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
 When, as here, competing motions for summary judgment are filed and one
is granted and one denied, the appellate court should “determine all questions
presented and should render the judgment the trial court should have rendered.” 
Tex. Workers’ Comp. Comm’n v.
Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004); Am. Hous. Found. v. Brazos County
Appraisal Dist.,
166 S.W.3d 885, 887 (Tex. App.—Waco 2005, pet. denied).  To prevail
on a traditional summary judgment motion, the movant must demonstrate that
there are no genuine issues of material fact and that it is entitled to
judgment as a matter of law.  See Diversicare Gen. Partner, Inc. v.
Rubio, 185
S.W.3d 842, 846 (Tex. 2005).  We will “consider all the evidence in
the light most favorable to the nonmovant, indulging every reasonable inference
in favor of the nonmovant and resolving any doubts against the motion.”  Goodyear Tire & Rubber Co. v. Mayes, No. 04-0993, 2007 Tex. Lexis
543, at *4 (Tex. June 15, 2007) (citing Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006) and Wal-Mart Stores, Inc. v.
Spates, 186 S.W.3d 566, 568 (Tex. 2006)).  We must determine “whether
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the evidence presented.”  Mayes, 2007 Tex. Lexis 543, at *1 (citing Spates, 186 S.W.3d
at 568 and City of Keller v. Wilson, 168 S.W.3d 802, 822-24 (Tex. 2005)).

The Doctrine of Ademption

“Ademption
describes the extinction of a specific bequest or devise because of the
disappearance of or disposition of the subject matter given from the estate of
the testator in his lifetime.”  San
 Antonio Area Found. v. Lang, 35 S.W.3d 636, 641-42 (Tex. 2000) (quoting Shriner’s Hosp. for Crippled
Children of Tex. v. Stahl, 610 S.W.2d 147, 148 (Tex. 1980)).  Absent a contrary
provision in the will, the “sale or removal of a specific bequest from the
estate adeems the devise or bequest.”  Id. at 642.  Because the will speaks at the time of the testator’s death, “only
the estate the testatrix then possessed passes under the terms of the will.”  Id.  “When a specific devise of realty is adeemed because the testatrix sold it
before her death, absent a contrary intent expressed in the will, the
beneficiaries of the realty under the will are not entitled to the sale
proceeds; instead, the proceeds pass under the residuary clause.”  Id.

When a specific devise of realty is
subject to a contract for sale executed by the testator before his death, the
doctrine of equitable conversion applies.  Equitable conversion is “that change
in the nature of property by which, for certain purposes, realty is considered
as personalty or personalty is considered as realty, and the property is
transmissible as so considered.”  Sebesta v. Daniels, 812
S.W.2d 641, 644 (Tex. App.—Houston [14th Dist.] 1991, writ denied); Parson v. Wolfe, 676 S.W.2d 689, 691
(Tex. App.—Amarillo 1984, no writ).  Equitable conversion may occur by will or by contract.  Sebesta, 812 S.W.2d at 644; Parson, 676 S.W.2d at 691.  In
equitable conversion by will, “the doctrine is used to carry out the intent of
the testator who directs that certain realty be sold or purchased.”  Parson, 676 S.W.2d at 691. 
In equitable conversion
by contract, the doctrine is used to determine the “status of the parties’
interests during the period between the execution of the contract of sale and
actual transfer of legal title” and “how the realty or personalty passes upon
the death of either the vendor or vendee.”  Sebesta, 812 S.W.2d at 644; Parson, 676 S.W.2d at 691.  In
equitable conversion by contract, “the purchaser of land is regarded in equity
as owner of the land and debtor for the purchase money, and the vendor is a
secured creditor ‘having a legal position not unlike that of a mortgagee.’”  Parson, 676 S.W.2d at 691.

Generally, “a contract by a testator, made after
his will, for the sale of land devised in the will, is in equity a revocation
of the devise and converts the realty into personalty, even though the contract
is not actually consummated until after the death of the testator.”  Lampman v. Sledge, 502 S.W.2d 957, 959 (Tex. Civ. App.—Waco
1973, writ ref’d n.r.e.) (citing Hardcastle v. Sibley, 107 S.W.2d 432, 438 (Tex. Civ. App.—El
Paso 1937, writ ref’d)).  The contract “will not effect an
equitable conversion of the realty into personalty unless the contract can be
specifically enforced by the testator and the purchaser at the time of the
testator’s death.”  Lampman, 502 S.W.2d at 959 (citing Willie v. Waggoner, 181 S.W.2d 319, 322 (Tex. Civ. App.—Austin
1944, writ ref.)).  The “pivotal question, when determining whether
an equitable conversion by contract has occurred, is whether the contract is
specifically enforceable.”  Parson, 676 S.W.2d at 692.

Texas cases
are not entirely clear as to whether this inquiry depends on the contract’s
status at the time of death or whether events transpiring after death may also
be considered.  We believe the better practice is to examine the contract’s
status at the time of the testator’s death.  See Lampman, 502
S.W.2d at 959 (question is whether contract can be specifically enforced “at
the time of the testator’s death”); see also Lang,
35 S.W.3d at 642 (will speaks at time of testator’s death).

ANALYSIS

            In two issues, Karl contends that the trial court erred by
denying his motion for summary judgment and granting Celeste’s motion.  In
support of this challenge, Karl argues that: (1) the contract is not specifically
enforceable and the devise was not adeemed because the contract contains
contingencies, the parties failed to close on the contract, and the parties
entered a subsequent Rule 11 agreement to fill in contingencies in the original
contract; and (2) fact issues exist as to whether the contract is a sham. 
Because Karl discusses his two issues collectively, we will do likewise.

Specific Performance

A contract is subject to specific performance if
it “contain[s] the essential
terms of a contract, expressed with such certainty and clarity
that it may be understood without recourse to parol evidence.”  Rus-Ann Dev. v. ECGC, Inc., 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no
pet.); see  Johnson v. Snell, 504 S.W.2d 397, 398 (Tex. 1973)
(“Specific performance
will be decreed only if the essential terms of the contract
are expressed with reasonable certainty”).  Parties may agree upon
some contractual terms, understanding them to be an agreement, and leave
other contract terms to be made later.  Oakrock Exploration Co. v. Killam, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied).  If an
essential term is left open for future negotiation, “there is nothing more than
an unenforceable agreement to agree,” and the contract is void.  Id.  “[A] party cannot accept an offer to form a contract unless the terms of
that contract are reasonably certain.”  Id.  “In certain
situations, a court may uphold an agreement by supplying missing terms.”  Id.  “To that end, Texas courts prefer to validate transactions rather than void them;
but, courts may not create a contract where none exists and they generally may
not interpolate or eliminate essential terms.”  Id.  Whether an
agreement is legally enforceable or binding is a question of law.  Id.

Contingencies

Karl argues that the contract contains three contingencies
that render it incapable of specific performance.  Celeste, Mark, and Robert
contend that Karl did not expressly raise this issue in his summary judgment
motion.[1]  See
Tex. R. Civ. P. 166a(c).

In his motion, Karl argued that the contract was
not specifically enforceable as a matter of law.  Celeste,
Mark, and Robert argued that the contract was valid, enforceable, and “clear
enough that all parties know their obligations.”  The parties clearly understood
Karl’s argument to address the contract’s enforceability and whether its terms
are clearly defined such that it could be specifically enforced.  Whether
contingencies exist in the contract bears on this issue.  See Lampman,
502 S.W.2d at 959 (“[a} contract that
is not to become binding except on certain conditions cannot be specifically enforced
until the conditions
have been complied with”).  Thus, we
may consider the existence of certain contingencies in determining whether the
contract is specifically enforceable.  See Guinn v. Bosque County, 58 S.W.3d 194, 199 (Tex. App.—Waco 2001, pet.
denied) (we look to the entire summary judgment record, consisting of the
motions, any responses, and the evidence attached thereto, to determine whether
a movant has established his right to judgment as a matter of law).

The first contingency Karl identifies is found in
the following provision:

FINANCING: The portion of Sales Price not payable
in cash shall be paid as follows:

Within 180 days after the Effective Date of this
contract Buyer shall apply for all third party financing or noteholder’s
approval of any assumption and make every reasonable effort to obtain financing
or assumption approval.

…

If financing (including any financed PMI premium)
or assumption approval is not obtained within 120 days after the effective date
hereof, this contract will terminate and the earnest money will be refunded to
Buyer.  

 

Because financing was never obtained, Karl argues
that the contract terminated by its own terms and cannot be revived without
entering a new agreement.

            The second contingency is found in the
following provision:

CONTRACT SALES PRICE:

Cash portion of Sales Price payable                                 To
Be Determined

by Buyer at closing  

 

Sum of all financing described in Paragraph 4               To
Be Determined

Karl argues that these terms were “left for later
negotiation,” making specific performance impossible.

           The third contingency relates to seller
financing and arises out of the following provision:

SPECIAL PROVISIONS: This sale is contingent upon
the following:

The property shall appraise for at least
$400,000.00 however, in the event it shall appraise for less than said purchase
price, Seller, Marvin William Mattlage, will agree to carry a short term lien
note for the difference.   

 

Because no appraisal was conducted, Karl contends
that there is no proof of value, the “manner of payment remains unsettled
because the contract remains contingent on an appraisal,” and the “short term
lien note” is “wholly undefined.”

            Celeste, Mark and Robert respond that
a letter sent by Mark and Robert to Marvin and Celeste, before Marvin’s death,
removed these three contingencies from the contract and made the sale an
all-cash transaction.  The letter states:

In accordance with the terms of the
above-referenced Contract and Land Contract, although we have not sold and
closed on the sale of our property at…Key West, Florida, we hereby submit in
writing our waiver of the “Sale of Buyer’s Property” clause[2]
in the Miscellaneous Clauses section of both the Contract and Land Contract
thus removing the contingency and all financing contingencies and continuing
with the Contract and Land Contract.

 

            Karl argues that this letter was sent
after the time for obtaining financing had expired and the contract had
terminated by its own terms.  However, the record does not indicate that the
parties at any time treated the contract as terminated.  After the letter was
sent and before Marvin’s death, the parties entered a written agreement extending
the time for closing.  Mark provided the trial court with an affidavit stating
that the contract had not been terminated.  Moreover, the contract was
contingent on the sale of Mark and Robert’s Florida property and expressly
granted Mark and Robert the right to either cancel the contract or remove “this
contingency and all financing contingencies and continue with the
Contract” if the Florida property did not close by July 15, 2004 (emphasis
added).

In the letter, dated July 15, 2004, Mark and
Robert clearly elected to remove “all financing contingencies.”  See Sun Exploration & Prod. Co.
v. Benton, 728
S.W.2d 35, 37 (Tex. 1987) (“[a] condition precedent may be waived”); see
also Goodyear Tire &
Rubber Co. v. Portilla, 879
S.W.2d 47, 50 n.5 (Tex. 1994) (where a
contractual provision “runs in favor of one party, that party may unilaterally
waive it, making the waiver an enforceable right against the party making it,
without additional consideration, meeting of the minds, or even communication
to the other party”); Smith v.
Nash, 571 S.W.2d 372, 375 (Tex. Civ.
App.—Texarkana 1978, no writ.) (“a
contract for the sale of land which is unconditional on the part of the seller,
but is conditional on the part of the buyer, may be specifically enforced when
the buyer elects to waive the condition and purchase the property in
accordance with the contract”).  This letter removed the financing requirements,
essentially obligating Mark and Robert to pay the entire $400,000 purchase
price in cash and making the “portion of the Sales Price not payable in cash”
inapplicable.  The cash and financing amounts were no longer “to be determined”
or left open for negotiation and the manner of payment was no longer uncertain.

Karl argues that even if these two contingencies
were removed by the letter, the appraisal contingency was not waived because the
contract could not be specifically enforced unless and until the property
appraised for $400,000.  We disagree.  The seller’s obligation to provide a
“short term lien note” was expressly contingent upon the appraisal that Mark
and Robert were required to fund.  The waiver of “all financing contingencies”
thereby removed the need for either an appraisal or a note.

Accordingly, we hold that the waiver letter disposed
of the three contingencies of which Karl complains.  See Benton, 728 S.W.2d at 37; see
also Portilla, 879 S.W.2d at 50 n.5; Smith, 571 S.W.2d at 375.

Failure to Close

Karl
relies on a Georgia case and a Massachusetts case for the proposition that,
because the parties failed to close on the contract, it is a failed conveyance
that cannot result in ademption, but revives the devise.  See Peacock v. Owens, 259 S.E.2d 458
(Ga. 1979); see also Kelley v. Neilson, 745 N.E.2d 952, 961 n.18 (Mass. 2001).  However, in Texas, an equitable conversion may
result “even though the contract is not actually consummated
until after the death of the testator.”  Lampman, 502 S.W.2d at 959 (emphasis added); see Hardcastle, 107 S.W.2d at
438 (“a contract by a
testator, made after his will, for the sale of lands thereby devised, is a
revocation of such devise in equity, and thereby converts such realty into
personalty, even though the purchase is not completed until after the death of the
testator”) (emphasis
added).  That the parties have not yet closed on the property is irrelevant to
our analysis.  See Lampman, 502 S.W.2d at 959; see also Hardcastle, 107 S.W.2d at
438.

Rule 11 Agreement 

Karl argues that a Rule 11 agreement by Celeste,
Mark, and Patricia Mattlage Long supports his argument that the contract is not
specifically enforceable.[3]  However,
we may only consider the record as it existed at the time of the motion and
cannot consider evidence that is not a part of the summary judgment record.  See
San Jacinto River Auth. v. Duke, 783 S.W.2d
209, 210 (Tex. 1990) (citing Central Educ. Agency v. Burke, 711 S.W.2d 7, 9 (Tex. 1986));
see also Nat’l Enter. v.
E.N.E. Props., 167 S.W.3d 39, 41
(Tex. App.—Waco 2005, no pet.).  Because
the Rule 11 agreement is outside the summary judgment record, we will not
consider it or any issues raised by it.

Sham

            Karl argues that fact issues exist as
to whether the contract is a sham.[4] 
Celeste, Mark, and Robert respond that this issue was not raised in Karl’s
summary judgment and so cannot be addressed on appeal.  On an appeal from summary judgment, we
cannot consider issues
not presented to the trial court.  See Tex.
R. Civ. P. 166a(c).  Nothing in the summary judgment record indicates
that Karl presented this argument to the trial court.  We cannot consider it.  See
id.

CONCLUSION

Because
the waiver letter removed the three contingencies of which Karl complains, the
contract’s essential terms are clearly defined such that it may be specifically
enforced.  See Rus-Ann, 222 S.W.3d at 927; see  also
Johnson, 504 S.W.2d at 398; Killam, 87 S.W.3d at
690. 
The devise of Home Place in Marvin’s will was equitably converted and adeemed. 
See Lang, 35 S.W.3d at
642; see also Parson, 676 S.W.2d at 691-92;
Lampman, 502 S.W.2d at 959.  We
overrule Karl’s two issues and affirm the trial court’s judgment.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed 

Opinion delivered and
filed November 7, 2007

[CV06]

 









[1]               Celeste, Mark, and
Robert also argue that Karl lacks standing to attack the contract’s validity
because he is not a party to the contract.  This argument ignores the fact that
Karl, as a devisee challenging whether the devise of Home Place was adeemed by
the contract, may attack the enforceability of the contract on equitable conversion
grounds.

 





[2]
              The “Sale of Buyer’s Property” clause states: 

 

This contract is
contingent on the closing of Buyer’s property located at…Key West, Florida 33040 (“Buyer’s Property”).  If Buyer’s property does not close by July 15, 2004,
Buyer may, within (3) days, cancel this Contract and receive a refund of
deposit or remove this contingency and all financing contingencies and continue
with the Contract.





[3]               Mark, Patricia,
and their brother Fred brought a separate suit against Celeste and the Estate for
waste to an unrelated property.

 





[4]               Karl argues that Celeste seeks to
benefit herself, standing to gain only $50,000 under the will, but $400,000
under the contract.  He contends that the trial court should have considered
this inference from the summary judgment evidence.