**HARDCASTLE et al. v. SIBLEY et al.**

**No. 3534.**

Court of Civil Appeals of Texas. El Paso.

June 17, 1937.

Rehearing Denied July 8, 1937.

McBroom & Clayton, of El Paso, and W. P. Hamblen, of Houston, for appellants.

Richard F. Burges and Walter S. Howe, both of El Paso, for appellees.

WALTHALL, Justice.

Appellees accept the statement of the nature and result of the suit as in appellants' brief as substantially correct. The trial court refused to allow interest upon the several sums of money involved, and appellees,

as to the claim for interest, present a counter assignment of error.

Appellants' statement of the suit, which we adopt, is substantially as follows:

This is an appeal by Walter C. Hardcastle and Douglas C. Crowell, executors of the estate of Madeleine C. Wood, deceased, from a judgment of the district court of El Paso county, Tex., Forty-first judicial district, restating, revising, and reforming the final account of said executors, filed in the probate court of El Paso county, Tex.

Said executors filed their final account on September 1, 1933. On January 10, 1935, the probate court entered its order restating said account, from which order the executors of the estate of Amelie Hyllested, deceased, one of the beneficiaries under the will of Madeleine C. Wood, deceased, appealed to the district court. Certain exceptions to this order were likewise taken by the executors of the Wood estate.

On trial de novo in the district court, judgment was entered further revising and reforming said final account, from which judgment and order this appeal is prosecuted.

Only two items are here at issue.

By virtue of the will of Madeleine C. Wood, deceased, all her personal property was left to her friend Amelie Hyllested, since deceased. The remainder of her estate, "both real and mixed," was given, share and share alike, to Mrs. Wood's sister, Marie Hardcastle, and to her friend Amelie Hyllested.

The two items in the restatement of the final account by the district court here at issue are as follows:

1. The sum of $11,227.86 representing the consideration paid by the United States for the interest of Madeleine C. Wood, or her estate, in certain lands comprising what is known as the Ascarate Grant, in El Paso county, Tex., which sum was divided by the executors of the Wood estate between Marie Hardcastle and the estate of Amelie Hyllested, deceased, as proceeds from the sale of real estate. This distribution was approved by the county court, but disapproved by the district court and ordered paid entirely to the estate of Amelie Hyllested, deceased, on the theory that there had been an equitable conversion of said real estate prior to Mrs. Wood's death, and hence that the proceeds of the sale should be distributed as personalty.

2. The sum of $2,700 representing certain sums of money paid to the Wood estate by the estate of Josephine Crosby, deceased, either as proceeds from the sale to the United States of the Crosby interest in the Ascarate Grant, as found by the trial court, or as rentals from real estate belonging to the Crosby estate, as contended by the executors of the Wood estate, appellants herein. This sum was likewise distributed by Executors Hardcastle and Crowell equally between Marie Hardcastle and the estate of Amelie Hyllested, on the theory that it represented proceeds from either the sale or rental of real estate and hence should be distributed as such. As to this issue, both the county court and the district court took the position that the amount should have been paid entirely to the estate of Amelie Hyllested as personal property. The county court took this position on the theory that the will of Josephine Crosby had effected an equitable conversion of her real estate into personalty. The district court concurred in this position, and took the further position that the contract for the sale of the land in the Ascarate Grant to the United States operated as an equitable conversion.

Judgment was entered in the district court on June 25, 1936, to which judgment the executors of the Wood estate duly excepted and gave notice of appeal.

## Opinion.

The trial court made findings of fact and conclusions of law. They are lengthy and all the facts found may not be applicable to the issues involved in this appeal, but at the suggestion in the brief of one of the parties we copy here the trial court's findings and conclusions as giving a history of the proceedings. The accounting is not involved here; the only question presented is whether there was an equitable conversion, and if so, how and when effected. They are as follows:

### "Findings of Fact.

"1. This is a controversy between the executors of the Estate of Amelie Hyllested and the executors of the Estate of Madeleine C. Wood. The matter involved is the proper distribution of certain funds derived from the sale of property to the United States by said Madeleine C. Wood prior to her death and certain funds derived from a sale by the executor of the Estate of Josephine Crosby, deceased, of an interest in said land to the United States. In the proceeds of such sale

by said executor, Madeleine C. Wood had an interest under the terms of the will of Josephine Crosby, deceased, her mother.

"2. Prior to the 6th day of September, 1930, the United States had appropriated the sum of $281,305.00 for the purpose of acquiring lands adjacent to Fort Bliss for the enlargement of said Fort.

"3. On the 6th day of September, 1930, D. C. Crowell and C. N. Bassett, each being duly authorized by the owners, made an offer in writing to sell the lands involved herein, with other lands, to the United States Government for the sum of $281,305.70. In substance, this offer was to convey a good and marketable title and furnish an abstract, showing such title, or furnish a guaranteed title. On the 23rd day of December, 1930, the duly authorized executive officer of the United States endorsed on the bottom of said offer, in substance: 'Approved and accepted on behalf of the United States of America in the amount of $281,305. and no cents. The abstract of title to the land to be furnished to show such title as the Attorney General will approve. Dated December 23, 1930.' Said endorsement was duly signed officially. The offer, with the modified acceptance, was promptly returned to said Crowell and Bassett. This modified offer was accepted in the following manner: Two deeds were executed in accordance with the modified acceptance and an abstract was prepared and furnished. This abstract, together with the two deeds, were tendered to the officers of the Government as a compliance with the modified offer. One deed covered what is termed as the Ascarate Grant, which is the property involved herein to the extent of what is called the Crosby interest therein; the other deed is not involved in any way in this litigation and will not be hereinafter mentioned. The deed to the Ascarate Grant land expressed a consideration of $146,305.00, in accordance with the original offer, as modified. This deed was dated January 21, 1931, and was signed by Madeleine C. Wood and a number of others. The date of the acknowledgment of said deed by Mrs. Wood was January 31, 1931.

"4. This deed, with the other deed and abstract of title, were turned over to the Legal Department of the United States as a compliance with the modified offer to purchase the land. The deeds were recorded in the County Clerk's office on the 17th day of June, 1931. The recording of the deeds did not amount to an acceptance of the tender of performance by the grantors; it was done to the end that the abstract would show complete title in the United States.

"5. Mrs. Wood died on the 2nd day of April, 1931. On July 6th, 1931, the executive officer of the United States, in charge of this matter, advised the State National Bank of El Paso, Texas, said bank holding power of attorney to collect for the owners of the land, that the Attorney General had approved the title on June 30th, 1931. There was enclosed a check on the Treasury Department of the United States, payable to the State National Bank, in the sum of $281,305.00. The Attorney General's opinion stated that the title was now vested in the United States.

"6. The deeds and abstract had been tendered to and held by the United States prior to the death of Mrs. Wood. Subsequent to her death, two quitclaim deeds purporting to cure some alleged minor defects in the record of title, were delivered and recorded.

"7. On July 11th, 1931, the State National Bank wrote a statement to D. C. Crowell showing the amount due on the sale of the Crosby interests in the Ascarate Grant, which is in reality the only lands involved herein, to be $70,565.83, less a commission of five percent thereon, due D. C. Crowell, and expenses of $739.64, due C. N. Bassett, leaving a balance of $66,297.90. A draft was enclosed for $11,227.86, representing the interest of Madeleine C. Wood, held by her independent of her mother's will. This draft was payable to Madeleine C. Wood. A draft in the sum of $21,386.46, payable to Walter C. Hardcastle, as executor of the will of Josephine Crosby, was enclosed.

"8. The draft for $11,227.86, payable to Mrs. Wood, was subsequently cashed by Walter C. Hardcastle and Douglas C. Crowell as executors of the Estate of Mrs. Wood. Walter C. Hardcastle, as executor of the Estate of Josephine Crosby, subsequently paid to Walter C. Hardcastle and Douglas C. Crowell, as executors of Mrs. Wood's estate, the sum of about $2700.00, representing the interest of Mrs. Wood in the estate of her mother, Josephine Crosby, that is, her interest in this sale.

"9. Madeleine C. Wood left a will bequeathing to Amelie Hyllested all of her personal property, wherever situated. There was, likewise, devised to said Amelie Hyllested one-half of all of her other property, both real and mixed, and to her sister, Marie C. Hardcastle, the other half. This be-

quest and devise was subject to certain conditions as to survivorship, which never arose, and hence are unimportant. This will was dated January 24, 1929, and Mrs. Wood died, as aforesaid, on April 2, 1931, Miss Hyllested surviving her. The will was probated on the 8th day of September 1931, and on the 14th day of September, 1931, Douglas C. Crowell and Walter C. Hardcastle, the executors named in the will, qualified as such. The said executors were not independent executors.

"10. Amelie Hyllested died subsequent to the death of Mrs. Wood, and thereafter John H. Sibley and Louise Bonny Hyllested qualified as her executors. Marie C. Hardcastle died subsequent to the death of Madeleine C. Wood, leaving a will in which she bequeathed her estate to Walter C. Hardcastle and his wife, Marie A. Hardcastle, and to Leonard C. Hardcastle and his wife Edna J. Hardcastle, share and share alike, and ———— was named executor.

"11. Douglas C. Crowell and Walter C. Hardcastle, as executors of the Estate of Mrs. Wood, divided the $11,227.86, representing Mrs. Wood's individual interest in the lands in question, equally between the representatives of Miss Hyllested and Mrs. Hardcastle. The fund was divided as passing as real estate under the will of Mrs. Wood.

"12. Mrs. Josephine Crosby died on the 24th day of March, 1926, leaving a will, which was thereafter probated. Among the beneficiaries in this will were Marie C. Hardcastle and Madeleine C. Wood. This will, with its codicils, is somewhat long and complicated. It appears in the Statement of Facts. It gives the executors power to sell, and directs them from time to time to make sales and divide the proceeds among the beneficiaries. In order to carry out the provisions of the will of Mrs. Crosby, it will be necessary for the executors or trustees therein named to ultimately sell all of the real estate formerly owned by Mrs. Crosby. However, there is a wide discretion as to the time of sale, the manifest purpose and intention being to enable them to sell for the best price possible.

"13. The sale by Walter C. Hardcastle, as executor of the estate of Mrs. Crosby, was in pursuance of the directions in her will. Under the sale, as made, the share of Madeleine C. Wood was about $2700.00. This $2700.00 was paid to the executors of the Estate of Madeleine C. Wood. This fund, less legitimate expenses of administration, was divided equally between Amelie Hyllested, or her representatives, and Marie Hardcastle, or her representatives. It was divided as though it had passed as real estate under the will of Madeleine C. Wood.

"14. The $11,227.86, the proper division of which is in dispute herein, arose from a sale made by her prior to her death. Her executors made no sale, nor had they power to do so without authorization from the Probate Court. The money was collected as a claim belonging to the Estate of Mrs. Wood. The $2700.00 was derived from the sale of an interest which those having the power to make were, prior to the death of Mrs. Wood, legally bound to make."

"Conclusions of Law.

"1. The offer by the holders of the Crosby interest in the Ascarate Grant and the modified acceptance by the United States, together with the action taken by the owners of the Crosby interest in such Grant in executing the deeds and furnishing abstract and tendering it to the United States, constituted a binding contract between the United States and the owners of the property, on the one hand to buy and on the other to sell. This contract was absolutely binding on all of the parties thereto prior to the death of Mrs. Wood.

"2. This contract converted the real estate into personalty, and the proceeds passed under Mrs. Wood's will to Amelie Hyllested as personalty. This conclusion is reinforced by the fact that Mrs. Wood, prior to her death, had tendered complete performance. If the deed had not passed out of her right to control, there was no delivery thereof.

"3. The executors received this money on the theory that the sale was consummated prior to Mrs. Wood's death. Under the will, it must be distributed as personalty.

"4. As to the money received by the Estate of Mrs. Wood, derived from the sale of the interest accruing to her under the will of her mother, the will of her mother unconditionally provided for the sale of the land by her executors or trustees and the distribution of the proceeds, and directed conversion of the same into money and distribution of the proceeds to the beneficiaries. The will of Mrs. Crosby effected an equitable conversion of her real estate into personalty. This property or interest passed under the will of Mrs. Wood to Miss Hyllested.

"5. The sale occurring prior to the death of Mrs. Wood, the property was, in any event, converted into personalty.

"[Signed]   P. R. Price, Judge."

At the request of appellants the trial court made the following additional findings of fact:

"1. Immediately following the endorsement dated December 23, 1930, on the offer dated September 6, 1930, mentioned in section 3 of the Court's findings of fact, the following endorsement appears: "Change of amount and conditions of abstract accepted," followed by two lines for signatures, which endorsement was placed thereon by the duly authorized executive officer of the United States but which endorsement was never signed by Madeleine C. Wood or by any one acting for her or by any of the other owners of the Ascarate Grant.

"2. The deed to the United States covering the Ascarate Grant was prepared and signed by the owners of the land, including Madeleine C. Wood, prior to the consummation of the transaction and prior to the approval of the title by the Government, for the purpose of facilitating the transaction and in order to avoid a delay such as defeated a previous negotiation with the Government for the sale of the same property."

"6. In purchasing real estate the Attorney General of the United States requires that the deed to the United States be recorded and incorporated in the abstract of title before the title to the property is approved."

In lieu of requested No. 9, the trial court by a supplementary finding found as follows: "After all debts were paid by unanimous action, the devisees under the will of Mrs. Crosby might have worked a re-conversion of the property from personalty into realty; without this unanimous accord none of its devisees could have forced a partition. To the above finding the executors of Madeleine Wood, deceased, excepted."

Under the court's finding No. 3, and other related findings, the trial court concluded as a matter of law that the offer by the holders of the Crosby interest in the Ascarate Grant and the modified acceptance by the United States, together with the action taken by the owners of the Crosby interest in such grant in executing the deeds and furnishing abstract and tendering it to the United States, constituted a binding contract between the two contracting parties, on the part of the buyer to buy and on the seller to sell. That such was the effect of the contract on both buyer and seller prior to the death of Mrs. Wood; that such being the legal effect of the contract, it converted the real estate, the subject-matter of the contract, into personalty, and the proceeds of the sale passed as personalty under Mrs. Wood's will to Amelie Hyllested.

Appellants controvert the above conclusion of the trial court, and say the contract had no such binding effect between Mrs. Madeleine Wood and the United States, for the several reasons stated. They are to the effect: First, the offer made by the owners of the Grant, including Mrs. Wood, was not accepted as made, but was a counter proposition; second, the proposition to sell was an option to the United States to buy which was not exercised until the completion of the sale after the death of Mrs. Wood; third, precedent conditions remained to be performed, such as the furnishing of such abstract of title as the Attorney General would approve, and the curing of defects in the title pointed out, and the approval of title. Where a contract of sale has been executed but not completed before the death of the vendor, and precedent conditions remain to be performed, there is no equitable conversion of the realty into personalty; third and fourth (practically same as others above stated); fifth, an option to purchase real estate works no equitable conversion until exercised, and when exercised, the conversion does not relate back to the inception of the option contract (the conditions precedent stated are substantially as above stated); sixth, states the rule in the construction of wills to determine the intention of the testator, and that it is apparent the intention of Mrs. Wood was to leave her interest in the grant equally to Amelie Hyllested and Marie Hardcastle as real estate; seventh (practically same as in next above); eighth, since Mrs. Wood took an interest or share in the Ascarate Grant left by Mrs. Josephine Crosby, by devise, the proceeds from the sale or rental of such property should pass as real estate under Mrs. Wood's will, and the division of such proceeds equally between Mrs. Wood's devisees, Marie Hardcastle and Amelie Hyllested, was proper.

As found and stated by the trial court, the matter involved in this controversy, between the executors of the two estates, is the proper distribution of certain funds derived from the sale of real estate known as the Ascarate Grant to the United States, by Mrs. Wood prior to her death, and certain funds derived from a sale by the executor of the estate of

Josephine Crosby, of an interest in said lands to the United States. Mrs. Wood had an interest in the proceeds of such sale under the terms of the will of Josephine Crosby. In her will Mrs. Wood bequeathed to Amelie Hyllested all of her personal property, and one-half of all her other property, real and mixed, and devised to Marie C. Hardcastle the other one-half. The sum of $11,227.86, the sum paid by the United States for the interest of Mrs. Wood, or her estate in the Ascarate Grant, was divided by the executors of Mrs. Wood's estate between Marie Hardcastle and the estate of Amelie Hyllested as proceeds from the sale of real estate. This distribution was approved by the county court, but on appeal the district court directed that said sum be paid to the estate of Amelie Hyllested on the theory that there had been an equitable conversion of said real estate prior to Mrs. Wood's death, and hence the proceeds of the sale of the real estate should be distributed as personalty.

The record discloses, we think, that the $2,700 was proceeds of the sale of the grant, and not rent, and we will so consider it.

Prior to September 6, 1930, the United States appropriated $281,305 for the purpose of acquiring land adjacent to Fort Bliss for the enlargement of said fort.

On September 6, 1930, the owners of the land made an offer in writing to sell the land involved here, with other land, to the United States, for the sum of $281,305.70. The offer of the owners was to convey a good and marketable title and furnish an abstract showing such title, or furnish a guaranteed title.

On December 23, 1930, the United States indorsed on the offer: "Approved and accepted on behalf of the United States of America in the amount of $281,305. and no more. The abstract of title to the land to be furnished to show such title as the Attorney General will approve. Dated December 23, 1930."

The modified acceptance of the offer of the owners, by the United States, was accepted by the owners, and two deeds were executed in accordance with the modified acceptance and an abstract of title was prepared and furnished, and tendered to the United States as a compliance with the modified offer; the deed to the Ascarate Grant expressed a consideration of $146,305 as in the original offer. The deed to the Ascarate Grant is the only one in-

volved here. That deed was dated January 21, 1931, and acknowledged January 31, 1931, and was signed by Mrs. Wood and others.

Mrs. Wood died April 2, 1931.

Apparently the Attorney General approved the title on June 30, 1931, his opinion stating that the title was now vested in the United States, and the consideration was paid.

We refer to the findings of fact for other facts not restated here.

■ Without discussing separately and in detail each of the grounds suggested in appellants' brief, we have concluded that the definite offer of the owners to sell the lands, and the definite acceptance of the offer of sale by the United States to purchase on specified terms, though modified in some unimportant features of the offer, but on terms enforceable at law on either side, equitable conversion was then complete by reason of the sale, regardless of formalities to be performed in carrying out the contract.

Mrs. Josephine Crosby, from whom Mrs. Wood received her interest in the Ascarate Grant, in her will and in each of the two codicils to her will, directed that the land given to Mrs. Wood by her will be sold by the executrix of her estate and the proceeds paid over. The time for the disposition of the land was not stated, but was to be "so far as possible without sacrifice." Appellants refer to Richardson v. McCloskey, (Tex.Civ.App.) 261 S.W. 801; Id. (Tex. Com.App.) 276 S.W. 680. The case presents a construction of the wills of T. H. McCloskey and his wife, Mrs. Laura McCloskey, under the facts of that case, and in construing the wills, the court said that in interpreting a will as to whether an equitable conversion has been provided, the primary rules for governing the interpretation of wills should be applied, and stated the rules.

■ The direction of Josephine Crosby as to the sale of the land and the proceeds distributed would have no meaning and would not be carried out unless the land was sold and the proceeds distributed as directed. The will of Josephine Crosby evidently effected the equitable conversion of the real estate conveyed in her will, and under the authorities was effective at the time of her death. 6 R.C.L. p. 1007, and cases cited; also 13 C.J. p. 871, par. 42, and cases cited. The will of Josephine Crosby is controlling. A sale of the land was made and the pro-

ceeds distributed, but we look to the will of Josephine Crosby for the conversion and not to the sale of the land, the will being the controlling factor.

We have not found in the will of Mrs. Wood that an equitable conversion different from that of Josephine Crosby has been provided. An equitable conversion has uniformly been defined to be that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible as such; the doctrine being founded on the maxim that equity regards and treats that as done which in fairness and good conscience ought to be done. Here Mrs. Wood during her lifetime contracted a sale of the land for money, and by a contract separate and apart from her will. If the contract for the sale of the land was effective, and changed Mrs. Wood's interest from that of real estate to that of personal estate, and the land was actually sold under the contract, and the money paid to the executors under Mrs. Wood's will, it seems that the executors, in settling with the devisees under the will, would necessarily have to settle with the property in kind then held by them. We find nothing in Mrs. Wood's will nor in her sale contract that expresses an intention on her part to preserve the property in kind as it was before the sale. It seems to be well settled that land directed to be sold, or, as here, actually sold, and turned into money, is to be considered as that species of property into which it is directed to be converted, or is converted whether the direction is by will or contract. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 161; Fletcher v. Ashburner, 1 Brown, ch. 497.

We have found no element of option in the sale contract. There was no element of time in the offer. Collier v. Robinson, 61 Tex.Civ.App. 164, 129 S.W. 389; Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S.W. 847, and authorities cited.

No exception is presented to the findings of fact by the trial court. We find no occasion to review the evidence.

The parties to the contract of sale, without any change in the offer, carried out the contract as offered and accepted, and the contract when executed converted the realty into personalty in this character of case from the time of the offer, and reverted back to the time of the death of Josephine Crosby.

Without quoting at length from the cases, we refer to Durfee House Furnishing Co. v. Great Atlantic & Pacific Tea Co., 100 Vt. 204, 136 A. 379, 50 A.L.R. 1322; 13 Corpus Juris, p. 856, § 13, stating that, in the absence of statutory provision a contract by a testator, made after his will, for the sale of lands thereby devised, is a revocation of such devise in equity, and thereby converts such realty into personalty, even though the purchase is not completed until after the death of the testator. Other authorities we have examined seem to adopt the above rule. Painter v. Painter, 220 Pa. 82, 69 A. 323; 20 L.R.A.(N.S.) 117; Bowen v. Lansing, 129 Mich. 117, 88 N.W. 384, 57 L.R.A. 643, 95 Am.St.Rep. 427, and notes; Ametrano v. Downs, 170 N.Y. 388, 63 N.E. 340, 58 L.R. A. 719, 88 Am.St.Rep. 671, and note; Flomerfelt v. Siglin, 155 Ala. 633, 47 So. 106, 130 Am.St.Rep. 67; Inghram v. Chandler, 179 Iowa, 304, 161 N.W. 434, 435, L.R.A. 1917D, page 713, where it is said that: "If a testator by his will direct imperatively and absolutely that real estate be sold, then for the purpose of the distribution of the estate it will be deemed sold as of the date of the death of the testator, and for the purpose of distribution will be treated as personalty, and not as land. This presents a typical case of the doctrine of equitable conversion. The doctrine, however, is not confined to directory provisions in a will. It is applied to those cases of conversion resulting from the contract of the decedent whereby as vendor he has undertaken to sell to a vendee who has undertaken to buy his land. * * * It becomes such by the act of the parties themselves."

The court refused to make appellants' third requested finding of fact that "The deed to the United States, after being signed by the various owners of the Ascarate Grant, was placed in escrow by them pending the final consummation of the sale, and the deed had not been legally and effectively delivered to the United States, or any one acting for it, prior to the death of Madeleine C. Wood." We think the consummation of the sale unimportant if, as we think, the conversion of the estate became effective by the will of Josephine Crosby.

The proposition of sale, however, had been accepted, and as found, the deed from Mrs. Wood, with the abstract of title, was turned over to the Legal Department of the United States as a compliance with the modified offer to purchase the land. Mrs. Wood's deed, with the other deed, was recorded on June 17, 1931, to show complete title of record in the United States. The court said in the fourth finding that "The recording of the deeds did not amount to an

acceptance of the tender of performance by the grantors." There were some quitclaim deeds to be secured to cure some minor defects or irregularity, to be added to the abstract, whether to Mrs. Wood's title or the other, is not clear. From the evidence of Hon. H. L. McCune, Assistant United States' Attorney, who examined and passed upon the titles in question for the United States, we understand that Mr. McCune finally passed the titles as good some time in February, 1931, and before Mrs. Wood's death in April, 1931.

Appellant refers us to Northern Texas R. & C. Co. v. Lary (Tex.Civ.App.) 136 S.W. 843. We have carefully reviewed that case, and most of the cases there referred to by Judge Levy, of the Texarkana court, and have found differences in essential facts from the instant case. We see no good reason to review it here.

Appellees, by cross-assignment, insist that Amelie Hyllested should be paid interest on the following sums of money which the court, in the judgment found should have been paid to Amelie Hyllested, were paid to Marie Hardcastle, viz., $4,000 paid on April 18, 1932; $750 paid on September 3, 1932; $500 paid on December 3, 1932.

The court refused to direct the payment of the interest.

Appellees suggest amendment of the judgment allowing interest as claimed.

Without discussing the matter of interest, we think interest should be allowed only from the date of the judgment. Davis v. Thorn, 6 Tex. 482; Stonebraker v. Friar, 70 Tex. 202, 7 S.W. 799. Appellees' cross-assignment is overruled.

The case is affirmed.