**Karl Paul MATTLAGE, Appellant,**

v.

**Celeste MATTLAGE, Individually and as Executrix of the Estate of Marvin Mattlage, Mark Mattlage, and Robert Snowden, Appellees.**

No. 10–06–00260–CV.

Court of Appeals of Texas, Waco.

Nov. 7, 2007.

Dissent to Order Denying Rehearing Dec. 12, 2007.

Greg White, Naman, Howell, Smith & Lee LLP, Waco, TX, for Appellant/Relator.

Andy McSwain, Fulbright Winniford PC, John Malone, Attorney At Law, Waco, TX, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This appeal involves a dispute among Karl Mattlage, Celeste Mattlage, Mark Mattlage, and Robert Snowden regarding the devise of a specific piece of property, known as "Home Place," in the will of Marvin Mattlage. Marvin's will devised Home Place to Karl. After executing his will, Marvin and his wife Celeste entered a contract to sell Home Place to Mark and Robert. After Marvin died and Celeste refused to honor the will, Karl sued Celeste seeking a declaratory judgment that the will prevails over the contract. Celeste sued Karl seeking a declaratory judgment that the contract prevails over the will and Mark and Robert for specific performance of the contract. These two suits were eventually consolidated and the issue in this appeal was severed into a separate proceeding. Karl and Celeste filed competing summary judgment motions. The trial court granted Celeste's motion, denied Karl's, and rendered judgment that the devise was adeemed and that Celeste was entitled to specific performance of the contract. In two issues, Karl contends that the trial court erred by granting Celeste's motion because the devise was not adeemed. We affirm.

## STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). When, as here, competing motions for summary judgment are filed and one is granted and one denied, the appellate court should "determine all questions presented and should render the judgment the trial court should have rendered." *Tex. Workers' Comp. Com'n. v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.*, 166 S.W.3d 885, 887 (Tex.App.Waco 2005, pet. denied). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). We will "consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Goodyear Tire Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex., 2007) (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006) and *Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006)). We must determine "whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Mayes*, 236 S.W.3d at 755 (citing *Spates*, 186 S.W.3d at 568 and *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex.2005)).

## THE DOCTRINE OF ADEMPTION

"Ademption describes the extinction of a specific bequest or devise because of the disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime." *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 641–42 (Tex.2000) (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 148 (Tex.1980)). Absent a contrary provision in the will, the "sale or removal of a specific bequest from the estate adeems the devise or bequest." *Id.* at 642. Because the will speaks at the time of the testator's death, "only the estate the testatrix then possessed passes under the terms of the will." *Id.* "When a specific devise of realty is adeemed because the testatrix sold it before her death, absent a contrary intent expressed in the will, the beneficiaries of the realty under the will are not entitled to the sale proceeds; instead, the proceeds pass under the residuary clause." *Id.*

When a specific devise of realty is subject to a contract for sale executed by the testator before his death, the doctrine of equitable conversion applies. Equitable conversion is "that change in the nature of property by which, for certain purposes, realty is considered as personalty or personalty is considered as realty, and the property is transmissible as so considered." *Sebesta v. Daniels*, 812 S.W.2d 641, 644 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *Parson v. Wolfe*, 676 S.W.2d 689, 691 (Tex.App.-Amarillo 1984, no writ). Equitable conversion may occur by will or by contract. *Sebesta*, 812 S.W.2d at 644; *Parson*, 676 S.W.2d at 691. In equitable conversion by will, "the doctrine is used to carry out the intent of the testator who directs that certain realty be sold or purchased." *Parson*, 676 S.W.2d at 691. In equitable conversion by contract, the doctrine is used to determine the "status of the parties' interests during the period between the execution of the contract of sale and actual transfer of legal title" and "how the realty or personalty passes upon the death of either the vendor or vendee." *Sebesta*, 812 S.W.2d at 644; *Parson*, 676 S.W.2d at 691. In equitable conversion by contract, "the purchaser of land is regarded in equity as owner of the land and debtor for the purchase money, and the vendor is a secured creditor 'having a legal position not unlike that of a mortgagee.'" *Parson*, 676 S.W.2d at 691.

Generally, "a contract by a testator, made after his will, for the sale of land devised in the will, is in equity a revocation of the devise and converts the realty into personalty, even though the contract is not actually consummated until after the death of the testator." *Lampman v. Sledge*, 502 S.W.2d 957, 959 (Tex. Civ.App.-Waco 1973, writ ref'd n.r.e.) (citing *Hardcastle v. Sibley*, 107 S.W.2d 432, 438 (Tex.Civ.App.El Paso 1937, writ refd)). The contract "will not effect an equitable conversion of the realty into personalty unless the contract can be specifically enforced by the testator and the purchaser at the time of the testator's death." *Lampman*, 502 S.W.2d at 959 (citing *Willie v. Waggoner*, 181 S.W.2d 319, 322 (Tex.Civ.App.Austin 1944, writ ref.)). The "pivotal question, when determining whether an equitable conversion by contract has occurred, is whether the contract is specifically enforceable." *Parson*, 676 S.W.2d at 692.

Texas cases are not entirely clear as to whether this inquiry depends on the contract's status at the time of death or whether events transpiring after death may also be considered. We believe the better practice is to examine the contract's status *at the time of the testator's death.* See *Lampman*, 502 S.W.2d at 959 (question is whether contract can be specifically

enforced "at the time of the testator's death"); *see also Lang*, 35 S.W.3d at 642 (will speaks at time of testator's death).

## ANALYSIS

In two issues, Karl contends that the trial court erred by denying his motion for summary judgment and granting Celeste's motion. In support of this challenge, Karl argues that: (1) the contract is not specifically enforceable and the devise was not adeemed because the contract contains contingencies, the parties failed to close on the contract, and the parties entered a subsequent Rule 11 agreement to fill in contingencies in the original contract; and (2) fact issues exist as to whether the contract is a sham. Because Karl discusses his two issues collectively, we will do likewise.

### Specific Performance

A contract is subject to specific performance if it "contain[s] the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence." *Rus–Ann Dev. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex.App.-Tyler 2007, no pet.); *see Johnson v. Snell*, 504 S.W.2d 397, 398 (Tex.1973) ("Specific performance will be decreed only if the essential terms of the contract are expressed with reasonable certainty"). Parties may agree upon some contractual terms, understanding them to be an agreement, and leave other contract terms to be made later. *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex.App.-San Antonio 2002, pet. denied). If an essential term is left open for future negotiation, "there is nothing more than an unenforceable agreement to agree," and

the contract is void. *Id.* "[A] party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain." *Id.* "In certain situations, a court may uphold an agreement by supplying missing terms." *Id.* "To that end, Texas courts prefer to validate transactions rather than void them; but, courts may not create a contract where none exists and they generally may not interpolate or eliminate essential terms." *Id.* Whether an agreement is legally enforceable or binding is a question of law. *Id.*

### Contingencies

Karl argues that the contract contains three contingencies that render it incapable of specific performance. Celeste, Mark, and Robert contend that Karl did not expressly raise this issue in his summary judgment motion.[1] *See* Tex.R. Civ. P. 166a(c).

In his motion, Karl argued that the contract was not specifically enforceable as a matter of law. Celeste, Mark, and Robert argued that the contract was valid, enforceable, and "clear enough that all parties know their obligations." The parties clearly understood Karl's argument to address the contract's enforceability and whether its terms are clearly defined such that it could be specifically enforced. Whether contingencies exist in the contract bears on this issue. *See Lampman*, 502 S.W.2d at 959 ("[a] contract that is not to become binding except on certain conditions cannot be specifically enforced until the conditions have been complied with"). Thus, we may consider the existence of certain contingencies in determining whether the contract is specifically enforceable. *See Guinn v. Bosque County*,

---

1. Celeste, Mark, and Robert also argue that Karl lacks standing to attack the contract's validity because he is not a party to the contract. This argument ignores the fact that Karl, as a devisee challenging whether the devise of Home Place was adeemed by the contract, may attack the enforceability of the contract on equitable conversion grounds.

58 S.W.3d 194, 199 (Tex.App.-Waco 2001, pet. denied) (we look to the entire summary judgment record, consisting of the motions, any responses, and the evidence attached thereto, to determine whether a movant has established his right to judgment as a matter of law).

The first contingency Karl identifies is found in the following provision:

FINANCING: The portion of Sales Price not payable in cash shall be paid as follows:

Within 180 days after the Effective Date of this contract Buyer shall apply for all third party financing or noteholder's approval of any assumption and make every reasonable effort to obtain financing or assumption approval.

. . .

If financing (including any financed PMI premium) or assumption approval is not obtained within 120 days after the effective date hereof, this contract will terminate and the earnest money will be refunded to Buyer.

Because financing was never obtained, Karl argues that the contract terminated by its own terms and cannot be revived without entering a new agreement.

The second contingency is found in the following provision:

CONTRACT SALES PRICE:

| | |
|---|---|
| Cash portion of Sales Price payable by Buyer at closing | To Be Determined |
| Sum of all financing described in Paragraph 4 | To Be Determined |

Karl argues that these terms were "left for later negotiation," making specific performance impossible.

The third contingency relates to seller financing and arises out of the following provision:

SPECIAL PROVISIONS: This sale is contingent upon the following:

The property shall appraise for at least $400,000.00 however, in the event it shall appraise for less than said purchase price, Seller, Marvin William Mattlage, will agree to carry a short term lien note for the difference.

Because no appraisal was conducted, Karl contends that there is no proof of value, the "manner of payment remains unsettled because the contract remains contingent on an appraisal," and the "short term lien note" is "wholly undefined."

Celeste, Mark and Robert respond that a letter sent by Mark and Robert to Marvin and Celeste, before Marvin's death, removed these three contingencies from the contract and made the sale an all-cash transaction. The letter states:

In accordance with the terms of the above-referenced Contract and Land Contract, although we have not sold and closed on the sale of our property at . . . Key West, Florida, we hereby submit in writing our waiver of the "Sale of Buyer's Property" clause [2] in the Miscellaneous Clauses section of both the Contract and Land Contract thus removing the contingency and all financing contingencies and continuing with the Contract and Land Contract.

Karl argues that this letter was sent after the time for obtaining financing had expired and the contract had terminated by its own terms. However, the record does not indicate that the parties at any

---

**2.** The "Sale of Buyer's Property" clause states:

This contract is contingent on the closing of Buyer's property located at . . . Key West, Florida 33040 ("Buyer's Property"). If Buyer's property does not close by July 15, 2004, Buyer may, within (3) days, cancel this Contract and receive a refund of deposit or remove this contingency and all financing contingencies and continue with the Contract.

time treated the contract as terminated. After the letter was sent and before Marvin's death, the parties entered a written agreement extending the time for closing. Mark provided the trial court with an affidavit stating that the contract had not been terminated. Moreover, the contract was contingent on the sale of Mark and Robert's Florida property and expressly granted Mark and Robert the right to either cancel the contract or remove "this contingency and all *financing contingencies* and continue with the Contract" if the Florida property did not close by July 15, 2004 (emphasis added).

In the letter, dated July 15, 2004, Mark and Robert clearly elected to remove "all financing contingencies." *See Sun Exploration Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987) ("[a] condition precedent may be waived"); *see also Goodyear Tire & Rubber Co. v. Portilla,* 879 S.W.2d 47, 50 n. 5 (Tex.1994) (where a contractual provision "runs in favor of one party, that party may unilaterally waive it, making the waiver an enforceable right against the party making it, without additional consideration, meeting of the minds, or even communication to the other party"); *Smith v. Nash,* 571 S.W.2d 372, 375 (Tex. Civ.App.-Texarkana 1978, no writ.) ("a contract for the sale of land which is unconditional on the part of the seller, but is conditional on the part of the buyer, may be specifically enforced when the buyer elects to waive the condition and purchase the property in accordance with the contract"). This letter removed the financing requirements, essentially obligating Mark and Robert to pay the entire $400,000 purchase price in cash and making the "portion of the Sales Price not payable in cash" inapplicable. The cash and financing amounts were no longer "to be determined" or left open for negotiation and the manner of payment was no longer uncertain.

Karl argues that even if these two contingencies were removed by the letter, the appraisal contingency was not waived because the contract could not be specifically enforced unless and until the property appraised for $400,000. We disagree. The seller's obligation to provide a "short term lien note" was expressly contingent upon the appraisal that Mark and Robert were required to fund. The waiver of "all financing contingencies" thereby removed the need for either an appraisal or a note.

Accordingly, we hold that the waiver letter disposed of the three contingencies of which Karl complains. *See Benton,* 728 S.W.2d at 37; *see also Portilla,* 879 S.W.2d at 50 n. 5; *Smith,* 571 S.W.2d at 375.

**Failure to Close**

■ Karl relies on a Georgia case and a Massachusetts case for the proposition that, because the parties failed to close on the contract, it is a failed conveyance that cannot result in ademption, but revives the devise. *See Peacock v. Owens,* 244 Ga. 203, 259 S.E.2d 458 (1979); *see also Kelley v. Neilson,* 433 Mass. 706, 745 N.E.2d 952, 961 n. 18 (2001). However, in Texas, an equitable conversion may result "even though the contract is *not actually consummated until after the death of the testator.*" *Lampman,* 502 S.W.2d at 959 (emphasis added); *see Hardcastle,* 107 S.W.2d at 438 ("a contract by a testator, made after his will, for the sale of lands thereby devised, is a revocation of such devise in equity, and thereby converts such realty into personalty, *even though the purchase is not completed until after the death of the testator*") (emphasis added). That the parties have not yet closed on the property is irrelevant to our analysis. *See Lampman,* 502 S.W.2d at 959; *see also Hardcastle,* 107 S.W.2d at 438.

**Rule 11   Agreement**

■ Karl argues that a Rule 11 agreement by Celeste, Mark, and Patricia Matt-

lage Long supports his argument that the contract is not specifically enforceable.[3] However, we may only consider the record as it existed at the time of the motion and cannot consider evidence that is not a part of the summary judgment record. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex.1990) (citing *Central Educ. Agency v. Burke*, 711 S.W.2d 7, 9 (Tex.1986)); *see also Nat'l Enter. v. E.N.E. Props.*, 167 S.W.3d 39, 41 (Tex. App.-Waco 2005, no pet.). Because the Rule 11 agreement is outside the summary judgment record, we will not consider it or any issues raised by it.

### Sham

█ Karl argues that fact issues exist as to whether the contract is a sham.[4] Celeste, Mark, and Robert respond that this issue was not raised in Karl's summary judgment and so cannot be addressed on appeal. On an appeal from summary judgment, we cannot consider issues not presented to the trial court. *See* Tex.R. Civ. P. 166a(c). Nothing in the summary judgment record indicates that Karl presented this argument to the trial court. We cannot consider it. *See id.*

### CONCLUSION

█ Because the waiver letter removed the three contingencies of which Karl complains, the contract's essential terms are clearly defined such that it may be specifically enforced. *See Rus–Ann*, 222 S.W.3d at 927; *see also Johnson*, 504 S.W.2d at 398; *Killam*, 87 S.W.3d at 690. The devise of Home Place in Marvin's will was equitably converted and adeemed. *See Lang*, 35 S.W.3d at 642; *see also*

---

**3.** Mark, Patricia, and their brother Fred brought a separate suit against Celeste and the Estate for waste to an unrelated property.

**4.** Karl argues that Celeste seeks to benefit herself, standing to gain only $50,000 under

*Parson*, 676 S.W.2d at 691–92; *Lampman*, 502 S.W.2d at 959. We overrule Karl's two issues and affirm the trial court's judgment.

TOM GRAY, Chief Justice, dissent to order denying motion for rehearing.

The issue in this summary judgment proceeding is whether we are going to allow a fact finder to decide a factual dispute, or whether we will frame the issue as a legal question and thus resolve it ourselves. I'll go with the jury trial on the facts of this case.

Karl Mattlage stresses on rehearing two factors that have caused me to change my opinion of the proper result in this appeal. The two issues are (1) whether the waiver of a specific clause in a real estate contract had the legal effect argued by the party; and (2) what do we do with newly discovered evidence, evidence not before the trial court at the time of the summary judgment hearing? Both issues are critical to the prior disposition but I believe the second issue to have the potential for more frequent statewide implications.

The opinion on original submission presents the issues and the general law sufficiently so I will not repeat them herein. What was omitted from the prior recitation of facts was a complete quotation of the alleged waiver of the financing contingencies. That alleged waiver was in the form of a letter as follows:

> 1309  Villa Mill Alley
>
> Key West, FL 33040
>
> July 15, 2004

Mr. and Mrs. Marvin Mattlage

3218  Canaan Church Road

---

the will, but $400,000 under the contract. He contends that the trial court should have considered this inference from the summary judgment evidence.

Crawford, TX 76638

Re: Farm and Ranch Contract last dated February 6, 2004 ("Contract") by and between Marvin William Mattlage and his wife, Celeste Mattlage ("Seller") and Mark D. Mattlage and Robert J. Snowden ("Buyer") for the "Home Place" of Marvin William Mattlage, 3218 Canaan Church Road, Crawford, TX 76638 ("Property") *AND* Unimproved Property Contract last dated February 6, 2004 ("Land Contract") by and between Celeste Mattlage ("Seller") and Mark D. Mattlage and Robert J. Snowden ("Buyer") for 1.05 acres of the F. Scranton Survey, abstract # 0787.00522, City of Crawford, McLennan County, Texas ("Property")

Subject: Waiver of Contingency Clause

Dear Marvin (Dad) and Celeste:

In accordance with the terms of the above-referenced Contract and Land Contract, although we have not sold and closed on the sale of our property at 1309 Villa Mill Alley, Key West, Florida, we hereby submit in writing our waiver of the "Sale of Buyer's Property" clause in the Miscellaneous Clauses section of both the Contract and Land Contract thus removing this contingency and all financing contingencies and continuing with the Contract and Land Contract.

Please let us know if you have any questions regarding this matter.

Sincerely,

/s/

Mark D. Mattlage

/s/

Robert J. Snowden

Now what is important here is that the actual language of the letter only waives one clause of the contract:

... we hereby submit in writing our waiver of the "Sale of Buyer's Property"

clause in the Miscellaneous Clauses section ...

The buyer's letter then purports to state the legal effect of this waiver:

... thus removing this contingency and all financing contingencies ...

The problem is that the legal effect of the waiver of the specific clause waived—the "Sale of Buyer's Property" clause—would not have the legal effect now argued by the buyer of also waiving the "Special Provisions: 1" clause. This clause provides as follows:

11. **SPECIAL PROVISIONS:** *This sale is contingent upon the following:*

*1. The property shall appraise for at least $400,000.00, however, in the event is shall appraise for less than said purchase price, Seller, Marvin William Mattlage, will agree to carry a short term lien note for the difference.* (Emphasis in original.)

While this "Special Provisions" clause also relates to an aspect of the financing of the purchase price, the question—the fact question—is whether the buyers also waived the "Special Provisions" clause. Today the buyer's motivation is to say: "Sure, we intended to waive that clause too!" But the motives have changed. Looking at the contract as of the date of the purported waiver, and if that waiver had the effect now argued by the buyers and as determined by the court, and further if the buyers were, have been, and are ready, willing, and able to close on the sale for the cash consideration of $400,000, why did the sale not close at that time, or before Marvin's death, or within a reasonable time thereafter? Were the buyers just stalling-waiting for the inevitable?

Thus, I would hold that there is a fact question on the scope of what was waived, reverse the summary judgment, and re-

mand to the trial court for further proceedings.

## SCOPE OF SUMMARY JUDGMENT RECORD

This brings forth the issue of broader importance. When, as here, evidence is discovered after the summary judgment, does it serve the purpose of summary judgment proceedings for the appellate court to ignore that evidence? Because I would remand this entire proceeding for further proceedings in the trial court, proceedings in which this evidence could be used to whatever extent and for whatever purpose is appropriate, I need not decide the issue. But I make the observation that it seems a waste of judicial resources to have to pursue an appeal and a trial court proceeding related to newly discovered evidence at the same time. At the very least, when, as here, there was a summary disposition at the trial level, we should be careful about turning a blind eye to newly discovered evidence. Maybe that is the time to use the Greek goddess of justice who appears without a blindfold as our inspiration, rather than the Roman concept which is traditionally blindfolded,[1] and actually look at the scales of justice to see in which direction they are inclined so that they may be righted—a concept at which jurors are uniquely suited.

Based on the foregoing, I withdraw my vote to affirm the trial court's judgment and, instead, dissent to the Court's denial of the motion for rehearing.

---

1. See http://lib.law.washington.edu/ref/themis. html.