Reversed and Remanded and Memorandum Opinion filed July 30, 2009








Reversed
and Remanded and Memorandum Opinion filed July 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00166-CV

____________

 

JAIME MARTINEZ, Appellant

 

V.

 

PHILLIP A. DONISI, INDEPENDENT
EXECUTOR OF THE ESTATE OF JACKIE MARIE GAMMILL, Appellee

 



 

On Appeal from the Probate
Court No. 2

Harris County, Texas

Trial Court Cause No. 332,455

 



 

M E M O R A N D U M  O P I N I O N








This is an appeal from a summary judgment in a case
involving tort claims filed against the executor of an estate by the decedent=s granddaughter. 
The granddaughter alleges that, in several bank accounts, the decedent held
funds given in trust by the granddaughter=s father for the
granddaughter=s benefit and that the executor and others tortiously
transferred these alleged trust funds to someone other than the granddaughter. 
The trial court granted the executor=s traditional
summary-judgment motion, which was based on one ground, statute of limitations,
and one piece of evidence, a one-page letter.  Because the executor failed to
prove conclusively when the granddaughter=s claims accrued,
we reverse the trial court=s judgment and remand.

I.  Factual and Procedural
Background

Appellant Jaime Martinez (AJaime@) is the daughter
of Cecil Gammill, Jr. (ACecil Jr.@) and the
granddaughter of Jackie Marie Gammill (AJackie@), who died in
2002.  Jaime alleges that, during Jackie=s lifetime, Cecil
Jr. gave Jackie funds that were deposited into various bank accounts opened by
Jackie and denominated as trust accounts for the benefit of Jaime.  Jaime
alleges that Jackie agreed to hold these funds in trust for Jaime=s benefit.

When Jackie=s health began to decline, one of her
daughters began taking care of her, and one of her sons, John Gammill (AJohn@) began managing
Jackie=s finances as
Jackie=s
attorney-in-fact.  According to Cecil Jr.=s affidavit, when
Cecil Jr. learned that John was managing Jackie=s finances, Cecil
Jr. became concerned that John would deprive Jaime of the alleged trust funds
in the bank accounts or that John would not understand the nature of the alleged
trust.  Cecil Jr. contacted attorney James Bettis, who wrote a letter dated
January 26, 2000, to Jackie (the ABettis Letter@).  The body of
the Bettis Letter reads in its entirety as follows:

I represent Cecil Gammill and Jaime Cecily
Martinez.  For some period of time, you have been holding property in your name
for the benefit of Jaime Cecily Martinez.  The property includes .944 acres
located at 5214 I-45 North, Houston, Texas.  Additionally, you have been
holding income derived from this property.  The property and money was held by
you because Ms. Martinez was a minor.  Ms. Martinez no longer is a minor. 
Thus, it is now time to transfer the property and money to Ms. Martinez.  My
understanding is that Cecil Gammill has attempted to contact you without
success concerning this matter.  It is important that the various interested
parties communicate in an effort to amicably effectuate transfer of the
property and money.  To this end, I would appreciate it if you or your attorney
would contact me.

If you do not
contact me, Mr. Gammill and Ms. Martinez will be forced to pursue all available
options. 








It is
undisputed that no property was given to Jaime in response to the Bettis
Letter.

Jackie died on July 29, 2002, and her will was probated. 
Litigation then ensued among Jaime, Cecil Jr., and Cecil Jr.=s siblings
regarding title to the real property mentioned in the Bettis Letter.[1] 
On July 28, 2006, Jaime filed suit in the trial court below against three
banks, several of Cecil Jr.=s siblings, and appellee Phillip A. Donisi
(ADonisi@), Independent
Executor of the Estate of Jackie Marie Gammill.  Jaime alleged that Donisi and
others tortiously transferred money out of several bank accounts in which
Jackie had been holding the funds in trust for the benefit of Jaime.  

Donisi filed a traditional motion for summary judgment as
to all claims asserted against him.  Donisi based his motion on only one
ground, statute of limitations, and on only one piece of evidence, the Bettis
Letter.  Donisi asserted that by January 26, 2000, as shown by this letter,
Jaime knew of the facts upon which she bases her tort claims against Donisi. 
Donisi stated that these facts are Athat [Jackie] was
allegedly holding money for the benefit of [Jaime] and not giving it to
[Jaime].@  Jaime responded
in opposition to the summary-judgment motion, proffering evidence and
asserting, among other things, that Donisi did not satisfy the burden of proof
for his traditional motion for summary judgment.

John, who was named a defendant below, did not join in
Donisi=s motion for
summary judgment but filed various objections to some of Jaime=s summary-judgment
evidence.  The trial court sustained some of John=s objections and
struck all or part of various documents proffered by Jaime.  The trial court
granted Donisi=s summary-judgment motion and dismissed all of Jaime=s claims against
Donisi.[2] 
Jaime challenges that ruling in this appeal.








II.  Standard of Review 

In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine issue of fact
if reasonable and fair-minded jurors could differ in their conclusions in light
of all of the summary-judgment evidence.  Goodyear Tire & Rubber Co. v.
Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  

III.  Analysis 

Jaime presents three issues in this appeal.  In her first
issue, she asserts that the trial court erred in granting summary judgment because
Donisi did not establish when her claims accrued and because there is a fact
issue with regard to the discovery rule.[3] 









A defendant moving for summary judgment on the ground of
limitations must conclusively establish the elements of its affirmative
defense.  KPMG Peat Marwick v. Harrison County Housing Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  To satisfy its burden, the defendant must (1)
establish conclusively when the claims in question accrued; and (2) negate the
discovery rule if it applies and has been pleaded or otherwise raised, by
proving as a matter of law that there is no genuine issue of material fact
about when the claimant discovered, or in the exercise of reasonable diligence
should have discovered, the nature of its injury.  Id.  Only if the
defendant meets this burden must the claimant adduce summary judgment proof
raising a fact issue in avoidance of the limitations defense.  Id.

In her first issue, Jaime argues that Donisi was not
entitled to summary judgment on the ground of limitations because he failed to
establish when her claims accrued.  Generally, a claim accrues when a wrongful
act causes some legal injury, even if the fact of injury is not discovered
until later, and even if all resulting damages have not yet occurred.  See
S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996).  Where applicable, the discovery
rule defers the accrual of a claim until the claimant knew or, in the exercise
of reasonable diligence, should have known of the facts giving rise to the
claim. See Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex.
2001). 

In her live pleading, Jaime made the following allegations[4]
regarding her claims:

!       The property which is the subject of Jaime=s claims is Amonies held in various bank
accounts opened by [Jackie] and denominated as >In Trust for the Benefit of Jaime Martinez.=@

!       Cecil Jr. gave funds to  Jackie during her
lifetime under an agreement whereby Jackie would deposit these monies into
several bank accounts under the name AJackie Marie Gammill in Trust for the Benefit of Jaime
Martinez.@ These funds have never been paid
to Jaime.

!       Upon information and belief, the banks in
which the alleged trust funds were deposited wrongfully paid those funds to
either Donisi or one of Cecil Jr.=s siblings.

!       One or more of Cecil Jr.=s siblings has in the past or is
currently attempting to steal the alleged trust funds that were due and payable
to Jaime.  








!       Donisi Awould be liable to [Jaime] in the event that it were
demonstrated that he knew that a certain account held in trust by [Jackie] were
[sic] paid out to one other than [Jaime]; or, if he knew or should have known
that an account held in trust by [Jackie] in trust [sic] for [Jaime] had been
transferred to another bank account shortly before her death for the purpose of
defrauding [Cecil Jr. and Jaime].@  

!       Donisi owes Jaime a fiduciary duty because he
is executor of Jackie=s Estate.  Donisi has a fiduciary
duty to cause the terms of the alleged trust bank accounts to be carried into
effect.

!       Donisi would violate his fiduciary duty A[i]f [Donisi] has paid bank account
funds held by [Jackie] in trust for the benefit of [Jaime] out to persons other
than the rightful beneficiary of the trusts.@

Jaime sought to recover against Donisi based on claims of
alleged violations of the Texas Theft Liability Act, conversion of money,
breach of fiduciary duty, and fraud.  Jaime also asserted civil conspiracy. 
She sought an order declaring her to be the rightful owner of the funds in
question and awarding her the funds allegedly removed from the bank accounts. 
Jaime also sought attorney=s fees, pre-judgment and post-judgment
interest, and punitive damages.  In her live pleading, Jaime does not state any
dates as to when Donisi=s allegedly tortious conduct allegedly
occurred. 








In his motion for summary judgment, Donisi argued that
Jaime=s claims accrued
at the latest in January 2000, when the Bettis Letter was sent to Jackie asking
Jackie to transfer certain real property and unspecified Amoney@ that Bettis
asserted had been held by Jackie for the benefit of Jaime.  Significantly, the
real property mentioned in the Bettis Letter is not the subject of Jaime=s claims in this
case.[5] 
Though in the letter Bettis does not refer to any bank accounts, we presume for
the sake of argument that the money mentioned in the Bettis Letter is the money
that Jaime seeks to recover in this case.  According to Donisi, the Bettis
Letter establishes that, as of January 2000, Jaime had asked for the return of
the property and threatened to pursue Aall available
options@ if the parties
did not communicate.  Donisi further argues that, because Jackie never gave
Jaime any money after Jackie received the Bettis Letter, Jaime=s claims must have
accrued by January 2000. 

We determine the nature of Jaime=s claims in this
case from her live pleading, not from the Bettis Letter, which was sent to
Jackie more than six years before Jaime filed this suit.  In her petition,
Jaime does not sue Donisi based on any alleged wrongful failure by Jackie to
give Jaime the alleged trust funds.  In fact, Jaime does not base her claims on
any alleged wrongful conduct by Jackie.  Rather, Jaime bases her claims on the
alleged wrongful acts of Donisi himself.[6]








Jaime alleges that Donisi or one of Cecil Jr.=s siblings
wrongfully withdrew money Jackie held in trust for Jaime in several bank
accounts.  Jaime also alleges that Donisi may have been involved in a
conspiracy to wrongfully withdraw the alleged trust funds from these accounts. 
Based on these allegations, limitations began to run on Jaime=s claims either
when the money in question was transferred out of the bank accounts or, if the
discovery rule applies to the claim in question, when Jaime discovered, or in
the exercise of reasonable diligence, should have discovered that these funds
had been transferred out of the bank accounts in question.  See KPMG
Peat Marwick, 988 S.W.2d at 748.  However, the only summary-judgment
evidence Donisi submitted was the Bettis Letter.  In this letter, Bettis makes
no mention of bank accounts, any alleged transfers from bank accounts, or any
facts bearing on Jaime=s knowledge or inquiry notice regarding
such transfers. The summary-judgment evidence attached to Donisi=s motion does not
establish the date on which any of Jaime=s claims accrued. 
See Anderson v. Cocheu, 176 S.W.3d 685, 690 (Tex. App.CDallas 2005, pet.
denied) (holding summary judgment was improper because defendant did not
conclusively prove by his summary-judgment evidence when plaintiff=s fraud claims
accrued); Meru v. Huerta, 136 S.W.3d 383, 388 (Tex. App.CCorpus Christi
2004, no pet.) (holding summary judgment was improper on defense of limitations
because movant=s evidence did not conclusively prove when claims
accrued).  Therefore, the trial court erred  in granting Donisi=s motion for
summary judgment.  Accordingly, we sustain Jaime=s first issue.[7]

IV.  Conclusion

Because Donisi failed to establish his limitations defense as a matter
of law, the trial court erred in granting summary judgment on Jaime=s claims against
Donisi.  Accordingly, we reverse the trial court=s judgment, and
remand for further proceedings consistent with this opinion.

 

/s/      Kem Thompson Frost

Justice

 

 

Panel
consists of Justices Frost, Brown, and Boyce.









[1]  The litigation resulted in at least two appeals. 
See Gammill v. Fettner, No. 14-07-00705-CV, CS.W.3dC, 2009 WL 1660476 (Tex. App.CHouston [14th Dist.] June 16, 2009, no pet. h.); Gammill
v. Gammill, No. 14-07-01013-CV, 2009 WL 1550479 (Tex. App.CHouston [14th Dist.] June 16, 2009, no pet. h.) (mem.
op.). 





[2]  The trial court also granted summary judgment in
favor of the three banks, and the other defendants  either were nonsuited or
never were served with process. 





[3]  In two other issues, Jaime also asserts that the
trial court erred in allowing John, a non-movant, to assert objections to Jaime=s evidence and that the trial court erred in
sustaining John=s objections. 





[4]  Because no special exceptions were sustained against
the petition, this court must construe the petition liberally to contain any
claims that reasonably may be inferred from the specific language used in the
petition, even if the petition fails to state all of the elements of that
claim.  SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 354B55 (Tex.1995).  Nonetheless, we cannot use a liberal
construction of the petition as a license to read into the petition a claim
that it does not contain.  See San Saba Energy, L.P. v. Crawford, 171
S.W.3d 323, 336 (Tex. App.CHouston [14th
Dist.] 2005, no pet).  





[5]  The summary-judgment evidence contains testimony
that Cecil Jr. allegedly purchased the real property mentioned in the Bettis
Letter for Jackie=s benefit, though he put the real property in Jackie=s name for asset protection.  Because Jaime does not
assert a claim regarding this real property in the instant case, we do not
address in this opinion any alleged claim Jaime has regarding the real
property, which is the subject of other lawsuits. See Gammill, 2009 WL
1660476, at *1B4; Gammill, 2009 WL 1550479, at *1.  





[6]  Donisi argues in his appellate brief that Jaime, in
her deposition, acknowledged that the claims she is asserting in this action
are Athe same as those that are in the Bettis [L]etter.@  In support, Donisi cites to pages from Jaime=s deposition that were not attached to the
summary-judgment motion.  They were attached to John=s objections to the summary-judgment evidence.  As
such, we cannot consider that testimony on appeal from the summary judgment.  See
Mathis v. Restoration Builders, Inc., 231 S.W.3d 47, 52 (Tex. App.CHouston [14th Dist.] 2007, no pet.); see also
Mattlage v. Mattlage, 243 S.W.3d 763, 772 (Tex. App.CWaco 2007, pet. denied). 





[7]  Given this disposition, we need not and do not address Jaime=s remaining issues.